FORSYTHE v. INCO

[95 N.C. App. 742 (1989)]

HERBERT T. FORSYTHE, Father and Next of Kin of VICKY FORSYTHE, Deceased, Employee; Plaintiff v. INCO, Employer; LIBERTY MUTUAL INSURANCE COMPANY, Carrier; Defendants

No. 8910IC312

(Filed 3 October 1989)

**Master and Servant § 55.5— workers' compensation—employee choking on sandwich—no injury arising out of employment**

The trial court properly concluded that an employee's death from choking while eating a peanut butter sandwich on her employer's premises did not arise out of her employment, since she was not subjected to any greater risk from eating her food than would have been the case if she had taken her lunch at home or elsewhere; furthermore, the fact that the employee was mentally retarded had no bearing on whether her employment created a greater risk of her choking.

APPEAL by plaintiff from opinion filed 13 December 1988 by the North Carolina Industrial Commission. Heard by the Full Commission on 7 December 1988 on an appeal by plaintiff from an opinion by Deputy Commissioner Lawrence J. Shuping denying the claim. Heard in the Court of Appeals 21 September 1989.

Vicky Forsythe was a forty-six-year-old woman who was mentally retarded from birth as a result of a congenital defect. She lived at a group home for the mentally retarded in May 1985. She had been employed at the defendant INCO's sheltered workshop in Henderson, North Carolina since September 1980. INCO's program was offered to service the needs of mentally and physically handicapped individuals with vocational training and provided sheltered, paid employment to adults with developmental disabilities.

Employees of INCO's workshop brought food from home, but were required to remain on the premises during lunch and breaks. Ms. Forsythe was on her lunch break on 2 May 1985 and was eating a peanut butter sandwich which she had brought in the defendant's lunchroom when she began choking at approximately 12:15 p.m. Employees of the defendant, who were on duty in the lunchroom to supervise the employees, immediately noticed Ms. Forsythe's difficulty and attempted to assist her, without success.

Ms. Forsythe was transported to Maria Parham Hospital in Henderson by employees of the defendant, where she was admitted

to the emergency room at 12:25 p.m. Hospital personnel removed a "big blob" of peanut butter sandwich which was covering Ms. Forsythe's pharynx. She suffered severe brain damage from a lack of oxygen and died on 7 May 1985.

The death of the plaintiff's intestate was directly and proximately caused by her aspirating and choking on the peanut butter sandwich, which caused a lack of oxygen and death.

At the time of her death, the plaintiff's intestate was an employee of the defendant, INCO, and covered by defendant Liberty Mutual Insurance Company's policy of workers' compensation.

*Zollicoffer & Zollicoffer, by Nicholas Long, Jr., for the plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Reid Russell, for defendant-appellees.*

LEWIS, Judge.

Under the Workers' Compensation Act, plaintiff's right to recover for the death of his daughter depends upon whether it resulted from an "accident arising out of and in the course of the employment." G.S. 97-2(2); *Bartlett v. Duke University*, 284 N.C. 230, 232, 200 S.E.2d 193, 194 (1973). "Arising out of the employment" refers to the origin or cause of the accidental injury; "in the course of employment" refers to the time, place and circumstances under which an accidental injury occurs. The two phrases involve two ideas and two conditions, both of which must be met to sustain an award. *Sweatt v. Rutherford County Board of Education*, 237 N.C. 653, 657, 75 S.E.2d 738, 742 (1953); *Harless v. Flynn*, 1 N.C. App. 448, 454, 162 S.E.2d 47, 52 (1968).

Conceding, *arguendo*, that plaintiff's intestate was in the course of her employment while she was eating her lunch, the determinative question is whether a causal connection existed between her choking on the peanut butter sandwich and her employment. *Bartlett, supra* at 233, 200 S.E.2d at 195.

We find that the facts in this case are analogous to the *Bartlett* case, cited above. In *Bartlett*, plaintiff's decedent was employed by Duke University as a construction administrator. Duke sent him to Washington, D.C., to recruit a maintenance engineer. As the trip required an overnight stay, Bartlett arranged to stay with

some friends in the Washington area. At approximately 6:30 p.m., Bartlett and his hostess went out to eat at a nearby restaurant. Bartlett had concluded his job-related duties for the day. While eating dinner, Bartlett aspirated a chunk of meat and immediately became unconscious. He subsequently died from the ensuing complications. His widow filed a workers' compensation claim. *Id.*

Citing various cases, the court noted the general standard for determining whether an injury arises out of one's employment:

The term 'arising out of the employment' is not susceptible of any all-inclusive definition, but it is generally said that an injury arises out of the employment, 'when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment.'

To have its origin in the employment an injury must come from a risk which might have been contemplated by a reasonable person familiar with the whole situation as incidental to the service when he entered the employment. The test 'excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.'

284 N.C. at 233, 200 S.E.2d 195 (citations omitted).

Applying the foregoing test, the court concluded that there was no causal relationship between Bartlett's employment and his aspiration of the meat. The court noted:

The risk that Commander Bartlett might choke on a piece of meat while dining at the Orleans House was the same risk to which he would have been exposed had he been eating at home or at any other public restaurant in the Washington area. Whether employed or unemployed, at home or traveling on business, one must eat to live. In short, eating is not peculiar

to traveling; it is a necessary part of daily living, and one's manner of eating, as well as his choice of food, is a highly personal matter.

284 N.C. at 234, 200 S.E.2d 195.

The reasoning in *Bartlett* is applicable to the facts before us. Although Ms. Forsythe was injured on her employer's premises, the fact that she ate lunch on the premises did not subject her to any greater risk from eating her food than would have been the case if she had taken her lunch at home, or anywhere else for that matter.

The fact that the accident occurred on the employer's premises is not sufficient, in and of itself, to warrant a finding that Ms. Forsythe's injury arose out of her employment. The North Carolina Supreme Court has stated:

> When an injury cannot fairly be traced to the employment as a contributing proximate cause, or if it comes from a hazard to which the employee would have been equally exposed apart from the employment, or from the hazard common to others, it does not arise out of the employment. *In such a situation the fact that the injury occurred on the employer's premises is immaterial.*

*Cole v. Guilford County and Hartford Acc. and Indem. Co.*, 259 N.C. 724, 727, 131 S.E.2d 308, 311 (1963) (citations omitted) (emphasis added). We find *Tscheiller v. National Weaving Co.*, 214 N.C. 449, 199 S.E. 623 (1938) distinguishable. In *Tscheiller*, claimant suffered food poisoning from eating a spoiled sandwich sold to her by her employer. Ms. Forsythe's sandwich was neither prepared nor provided by INCO. Rather, it was prepared at the group home and brought to work by Ms. Forsythe herself.

Plaintiff has put forth no evidence that her death arose out of her employment. Her employment at INCO created no greater risk of injury or death by choking than the risk one must take every time food is ingested. Plaintiff contends that the defendant owed a higher duty of care to its employees because they were mentally retarded. This argument is better suited to a negligence action where duty and foreseeability are required to be proven in order for the plaintiff to recover. This, however, is a workers' compensation claim where fault has been eliminated and the worker may recover without proving negligence if the injury arises out

of and in the course of employment. *Bare v. Wayne Poultry Co.,* 70 N.C. App. 88, 94, 318 S.E.2d 534, 539 (1984), *cert. denied,* 312 N.C. 796, 325 S.E.2d 484 (1985). The fact that the plaintiff's intestate was mentally retarded has no bearing on whether her employment created a greater risk of her choking. Accordingly, we

Affirm.

Judges PHILLIPS and COZORT concur.